In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3127

JEREMY MEYERS, individually, and
on behalf of all others similarly situated,

*Plaintiff-Appellant*,

*v.*

ONEIDA TRIBE OF INDIANS OF WISCONSIN,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:15-cv-00445-WCG — **William C. Griesbach**, *Chief Judge*.

ARGUED FEBRUARY 19, 2016 — DECIDED SEPTEMBER 8, 2016

Before MANION and ROVNER, *Circuit Judges,* and BLAKEY, *District Judge*.*

ROVNER, *Circuit Judge*. In response to the burgeoning problem of identity theft, when Congress enacted the Fair and Accurate Credit Transaction Act (FACTA) in 2003, it in-

---

* The Honorable John Robert Blakey, of the Northern District of Illinois, sitting by designation.

cluded within the Act a provision to reduce the amount of potentially misappropriateable information produced in credit and debit card receipts. The Act prohibits merchants from printing on the receipt the credit card expiration date and more than the last five digits of the credit or debit card number. The plaintiff in this case, Jeremy Meyers, used his credit card to make purchases at two stores owned by the defendant, the Oneida Tribe of Indians of Wisconsin, and received an electronically-printed receipt at each store that included more than the last five digits of his credit card as well as the card's expiration date. Meyers brought a putative class action in the eastern District of Wisconsin for violations of FACTA, but the district court determined that the defendant, an Indian Tribe, was immune from suit under the Act. Meyers appeals and we affirm.

## I.

The facts in this case are simple and not in dispute. Between February 6 and 17, 2015, Meyers used his credit card to make purchases at the Oneida Travel Center and two Oneida One Stop retail locations in and around Green Bay, Wisconsin. All three stores are owned and operated by a federally-recognized Indian tribe, the Oneida Tribe of Indians of Wisconsin. At each store he received electronically printed receipts that included more than the last five digits of his credit card as well as the card's expiration date. He alleges that the Tribe issued these receipts in violation of FACTA.

FACTA, an amendment to the Fair Credit Reporting Act, states that,

> [n]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1). FACTA defines a person as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

Meyers sued the Oneida Tribe for these alleged violations of FACTA and brought a putative class action on behalf of all credit and debit card holders who, after June 3, 2008, received from the Oneida Tribe, an electronically printed receipt that displayed more than the last five digits of the person's credit or debit card or displayed the card's expiration date. The district court judge stayed a decision on certification of the class. (R. 7).[1]

The Oneida Tribe moved to dismiss Meyers' claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Tribe argued that Meyers' claims were barred under the doctrine of tribal sovereign immunity and that Meyers had not suffered an "injury in fact" granting him standing under Article III of the Constitution.

The district court correctly noted, as we discuss below, that the question of sovereign immunity is not jurisdictional. Nevertheless, the court properly treated the Tribe's motion

---

[1] Unless otherwise noted, references are to the record in the district court.

to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as a motion to dismiss for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *See Miller v. Herman*, 600 F.3d 726, 732–33 (7th Cir. 2010); citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) (when appropriate, a court may treat a motion filed under Rule 12(b)(1) as if it were a Rule 12(b)(6) motion). The district court subsequently concluded that the Tribe was immune from suit and granted the motion to dismiss. This appeal followed.

## II.

### A.

We begin with the threshold matter of jurisdiction. Just recently, the Supreme Court issued its decision in *Spokeo* which considered whether a plaintiff had adequately alleged injury in fact so as to acquire standing under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The plaintiff in that case alleged injury pursuant to a different part of the Fair Credit Reporting Act than the one at issue in this case—one that set forth requirements concerning the accurate creation and use of consumer reports. The Supreme Court explained that in order to satisfy the "case or controversy" requirement of Article III of the Constitution, the injury must be both particularized and concrete and thus a plaintiff cannot satisfy these demands by alleging a bare procedural violation. *Id.* at 1550. It went on to explain:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person

a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Id.* at 1549.

In the district court, the defendants raised a claim of subject matter jurisdiction, and noted the then-pending *Spokeo* case (R. 14, p.15-16), but it has abandoned that issue on appeal and instead focuses only on the issue of sovereign immunity as decided by the district court. Neither party briefed the issues of subject matter jurisdiction raised in *Spokeo*, nor did either party submit supplemental authority regarding *Spokeo*. It is certainly true that a court may not decide the merits of a case without subject matter jurisdiction even if the parties have not themselves raised it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), *United States v. Cook County*, 167 F.3d 381, 387 (7th Cir. 1999). This form of "'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt" was squarely rejected by the Supreme Court in *Steel Co.*, 523 U.S. at 101. Shortly thereafter, however, the Supreme Court made clear that its ruling in *Steel Co.* did not mean that a federal court must consider subject matter jurisdiction over all other threshold matters. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). To the contrary, "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), citing *Ruhrgas*, 526 U.S. at 584–85.

The issue of Article III constitutional standing after *Spokeo*, which was decided after all of the briefing and ar-

gument had concluded in this case, has not been presented to this court.[2] We could remand this case to the district court to determine whether Meyers has standing in light of *Spokeo* (or request additional briefing in this court). That would answer the threshold question of whether the plaintiff is properly before this court for purposes of subject matter jurisdiction. However, another threshold issue is easily answered—that is whether the plaintiff can obtain relief from the defendant through this suit. We conclude that the defendant has sovereign immunity and therefore it cannot. The Supreme Court has instructed that a court "may find that concerns of judicial economy and restraint are overriding" and therefore decide other threshold issues before subject matter jurisdiction. *See Ruhrgas*, 526 U.S. at 586. It makes little sense for this court to waste the resources of the district court (and the time for remand, and the parties in briefing) asking it to determine one threshold issue when another is so easily and readily resolved here.

There is one wrinkle to this conclusion: this circuit has clearly held that the question of sovereign immunity is not a jurisdictional one. *See, e.g., Smoke Shop, LLC v. United States*, 761 F.3d 779, 782, n.1 (7th Cir. 2014); *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008), *Parrott v. United States*,

---

[2] In another pending matter by this same plaintiff before this court, Meyers has alleged an almost identical violation of FACTA against a different defendant. The parties in that matter did brief the issue of standing after the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *See Meyers v. Nicolet Restaurant, De Pere, LLC*, No. 16-2075, Appellate Record No. 8, 11, 13. And the parties have presented letters of supplemental authority informing the court of recently decided cases which cite *Spokeo*. *Id.* at 15, 16, & 17.

536 F.3d 629, 634–35 (7th Cir. 2008).[3] "What sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief." *Parrott*, 536 F.3d at 634–35, citing *Cook County*, 167 F.3d at 389. Sovereign immunity, therefore, is a waivable defense. *Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). In addition to being a defense, however, sovereign immunity, like qualified immunity, also bears the characteristics of "immunity from trial and the attendant burdens of litigation." *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 667 (7th Cir. 2012); *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085, 1089 (7th Cir. 2014) (Sovereign immunity is part of a class "of cases [that] involve claims of immunity from the travails of a trial and not just from an adverse judgment."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation."). This is why "an order rejecting a foreign government's claim of sovereign immunity also meets the criteria for collateral-order appeal." *Herx*, 772 F.3d at 1089. Thus, no matter whether we give sovereign immunity the label "jurisdictional" or not, it is nevertheless a "threshold

---

[3] Other courts disagree. *See, e.g., Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016); *Patchak v. Jewell*, No. 15-5200, 2016 WL 3854056, at *8 (D.C. Cir. July 15, 2016); *Puckett v. Lexington-Fayette Urban Cty. Gov't, No. 15-6097*, 2016 WL 4269802, at *3 (6th Cir. Aug. 15, 2016); *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302 (10th Cir. 2001)). It is not entirely clear, however, whether the disagreement in each case is a matter of substance or labels. *See* note 4, infra.

ground[] for denying audience to a case on the merits."
*Ruhrgas*, 526 U.S. at 585.[4]

In short, at the same time that we exercise our right to
"choose among threshold grounds for denying audience to a
case on the merits," *Id.*, we emphasize two issues while do-
ing so. First, the question of sovereign immunity is not one
on the merits so we do not run afoul of the Supreme Court's
prohibitions in *Steel Company. See Steel Co.*, 523 U.S. at 93–94.
"[J]urisdiction is vital only if the court proposes to issue a
judgment on the merits." *Sinochem Int'l*, 549 U.S. at 431, cit-
ing *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir.
2006).

Second, our decision to decide the question of sovereign
immunity rather than remand for a determination of stand-
ing under *Spokeo* is not meant to declare that the question of
sovereign immunity is a jurisdictional one. "Customarily, a
federal court first resolves doubts about its jurisdiction over
the subject matter." *Ruhrgas*, 526 U.S. at 578. As the Supreme
Court noted, however, there are numerous circumstances in
which a court appropriately accords priority to a non-merits
threshold inquiry other than subject matter jurisdiction, such
as pendent jurisdiction, forum non conveniens, abstention,
and others. *Sinochem*, 549 U.S. at 431. As it was pending, we
predicted that this would be the Supreme Court's likely rul-
ing in *Sinochem,* noting that "there are many reasons for *not*
adjudicating—lack of subject-matter jurisdiction, lack of per-
sonal jurisdiction, lack of ripeness, abstention, and *forum non
conveniens." Intec USA*, 467 F.3d at 1041 (emphasis in origi-

---

[4] *See* Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*,
62 Okla. L. Rev. 89 (2009).

nal). And, in fact, the Supreme Court adopted this court's statement that "jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem Int'l*, 549 U.S. at 431, citing *Intec*, 467 F.3d at 1041. In this case, the Supreme Court issued the *Spokeo* decision after this case was already briefed and argued. The question as to whether the injuries sustained in FACTA cases such as this one are concrete enough to satisfy the standard in *Spokeo* is still unresolved. *Compare Guarisma v. Microsoft Corp.*, ——F.Supp.3d ——, ——, 2016 WL 4017196, at *3 (S.D. Fla. July 26, 2016) ("violation of the FACTA constitutes a concrete injury in and of itself") *and Wood v. J Choo USA, Inc.*, No. 15CV81487BLOOMVALLE, 2016 WL 4249953, at *6 (S.D. Fla. Aug. 11, 2016) (noting that printing the violating receipt is, in and of itself, a concrete injury) *with Noble v. Nevada Checker CAB Corp.*, No. 215CV02322RCJVCF, 2016 WL 4432685, at *4 (D. Nev. Aug. 19, 2016) ("Plaintiffs have no standing to complain of the putative technical violations of the statute alleged here, because the putative violations created no 'concrete' harm of the type sought to be prevented by Congress, and Plaintiffs have not separately alleged any actual harm.") A later court might decide it best to address the Article III standing issue first, but because a federal court has leeway to choose among threshold grounds for denying an audience on the merits, and our conclusion that the defendants have sovereign immunity resolves a non-merits threshold matter without further burden on the courts and parties, we choose that route today.

**B.**

In evaluating the Tribe's claim of sovereign immunity, we begin with the uncontroversial, two-century-old-concept

that Indian tribes have inherent sovereign authority. *Michigan v. Bay Mills Indian Comty.*, 134 S. Ct. 2024, 2030 (2014). More could be said of the history and philosophy behind this sovereignty as the court described it in *Bay Mills*, but the upshot is that Indian tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers. … Thus unless and until Congress acts, the tribes retain their historic sovereign authority" *Id*. This is true even for a tribe's commercial activities. *Id.* at 2031.

The Supreme Court has instructed time and again that if it is Congress' intent to abrogate tribal immunity, it must clearly and unequivocally express that purpose. *Id. See also*, *C & L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001); *United States v. Dion*, 476 U.S. 734, 738–39 (1986); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). The list of cases could continue at length. Any ambiguity must be interpreted in favor of sovereign immunity. *Dolan v. United States Postal Serv.*, 546 U.S. 481, 498 (2006); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–44 (1980) ("Ambiguities in federal law have been construed generously in order to comport with these traditional notions of sovereignty and with the federal policy of encouraging tribal independence."). We review the legal question of whether Congress has abrogated tribal sovereign immunity de novo. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 929 (7th Cir. 2008).

Congress did not specifically list Indian tribes in FACTA's definition of "person." *See* 15 U.S.C. § 1681 a(b). Meyers claims that the definition of "person" which includes "any … government" is broad enough to include Indian tribes. Perhaps if Congress were writing on a blank slate,

this argument would have more teeth, but Congress has demonstrated that it knows full well how to abrogate tribal immunity. *See, e.g.*, Safe Water Drinking Act, 42 U.S.C. §§ 300j-9(i)(2)(A), 300f(10), 300f(12) (defining person to include municipality and municipality to include an Indian tribe);[5] Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901, 6903(13)(A), 6903(15);[6] Fair Debt Collection Procedures Act, 28 U.S.C. §§ 3002(7), 3002(10) (defining "person" to include "a natural person (including an individual Indian) … or an Indian tribe."[7]

It is true that Congress need not invoke "magic words" to abrogate immunity. *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012). In fact, in both *Blue Legs* and *Osage Tribal Council*, the courts had to take an indirect route to determine that Congress meant to abrogate immunity by finding that the term "person" in the respective statute covered municipalities, and that the term "municipalities," in turn, was defined to cover "Indian tribes," *See Blue Legs*, 867 F.2d at 1097; *Osage Tribal Council*, 187 F.3d at 1182. As one federal district court noted while surveying the field, however, "there is not one

---

[5] *See Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174, 1180-81 (10th Cir. 1999) ("the language of the Safe Drinking Water Act contains a clear and explicit waiver of tribal immunity.").

[6] *See Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989) ("It thus seems clear that the text and history of the RCRA clearly indicates congressional intent to abrogate the Tribe's sovereign immunity with respect to violations of the RCRA.").

[7] *See United States v. Weddell*, 12 F. Supp. 2d 999, 1000 (D.S.D. 1998), *aff'd*, 187 F.3d 645 (8th Cir. 1999) (finding "the clear language supports a conclusion that Congress waived the sovereign immunity of Indian tribes.").

example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute." *In re Greektown Holdings*, LLC, 532 B.R. 680, 693 (E.D. Mich. 2015) (emphasis in original).

There is, however, one example of a circuit court abrogating tribal immunity without an express mention of Indian tribes somewhere in the statute, and Meyers attempts to hitch himself to this wagon. *See Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004), *cert. denied*, 543 U.S. 871 (2004). In *Krystal Energy*, the Ninth Circuit found that Congress intended to abrogate Indian immunity under the Bankruptcy Code despite the fact that no definition in the Bankruptcy Code actually lists "Indian tribes" as either a foreign or domestic government. *Id.* at 1057. The Bankruptcy Code at issue specifically stated that it abrogated sovereign immunity as to a "governmental unit" which it defined to include:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; *or other foreign or domestic government*.

11 U.S.C.A. § 101(27) (emphasis added). *Id.* at 1057. The Ninth Circuit concluded that the category of "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate. *Id.* at 1058.

Other federal courts to have considered this question disagree. These other courts hold that because Indian tribes are not specifically named in the Bankruptcy Code, a court would have to infer that Congress intended the phrase "other foreign or domestic government" to encompass tribes and that such an inference is inappropriate. For example, in *In re Whitaker*, 474 B.R. 687, 695 (B.A.P. 8th Cir. 2012), the Bankruptcy Appellate Panel of the Eighth Circuit rejected the Ninth Circuit's conclusion that Congress can express its intent to abrogate sovereign immunity as to Indian tribes without specifically saying so. Instead, the *Whitaker* court adhered to the general principle that statutes are to be interpreted for the benefit of Indian tribes and that inferences like the one made by the Ninth Circuit were therefore impermissible. *Id.* It concluded, as a result, that in enacting the provision of the Bankruptcy Code, Congress did not unequivocally express its intent to abrogate the sovereign immunity of Indian tribes. *Id.* In the same vein, the district court in *In re Greektown* holdings, sitting in review of the United States Bankruptcy Court for the Eastern District of Michigan, reasoned as follows:

> This Court cannot say with "perfect confidence" that the phrase "other domestic government" unambiguously, clearly, unequivocally and unmistakably refers to Indian tribes. The Bankruptcy Court's conclusion does not give appropriate deference to the Supreme Court's recent admonition that "[t]he special brand of sovereignty the tribes retain—both the nature and its extent—rests in the hands of Congress." *Bay Mills,* 134 S. Ct. at 2037. While Congress may not have to utter "magic

> words," Supreme Court precedent clearly dictates that it utter words that beyond equivocation or the slightest shred of doubt mean "Indian tribes." Congress did not do so in sections 106(a) and 101(27) of the Bankruptcy Code and thus the Tribe is entitled to sovereign immunity from suit in the underlying MUFTA proceeding.

*In re Greektown Holdings,* 532 B.R. at 700–01. The bankruptcy court for the Northern District of Iowa came to the same conclusion, noting that the bankruptcy statute makes no specific mention of Indian tribes, and thus was insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity. *In re Nat'l Cattle Cong.*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000).

Of course we are not beholden to the precedent of any of these courts. [8] Nor is the interpretation of the specific definition of "domestic government" in the Bankruptcy Code directly on point for purposes of interpreting a different definition in FACTA. We need not weigh in on the conflict between these courts on how to interpret the breadth the term "other domestic governments" under the Bankruptcy Code, because we conclude that Congress simply has not unequiv-

---

[8] Meyers implores us to give extra weight to the Ninth Circuit's holding because it has more experience with issues involving Indian Tribes. This is a frivolous imploration. Courts of Appeals hear cases on everything from bankruptcy to maritime law to ERISA to diversity suits about matters of state law. It is the job of the Court of Appeals to become expert on any area of law before it. The Ninth Circuit has no more access to legal research on Indian tribe immunity than any other court.

ocally abrogated the sovereign immunity of Indian Tribes under the FACTA provision at issue in this case.

Meyers makes much of this court's decision in *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014), in which we held that, in enacting the Fair Credit Reporting Act, Congress abrogated the United States' sovereign immunity. We reasoned that the Act declares that any "person" who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages, and then defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Bormes*, 759 F.3d at 795, citing 15 U.S.C. §§ 1681n(a), 1681o(a), 1681a(b). Because there is no debate that the United States is a government, we held, the answer was plain. *Bormes*, 759 F.3d at 795. In *Bormes*, we concluded that, "[b]y authorizing monetary relief against *every* kind of government, the United States has waived its sovereign immunity." *Id*. (emphasis in original). Meyers would like us to interpret this statement to mean that "every government" must also include Indian tribes. As the district court noted, however, if there was any implication about other sovereigns, it was clearly dicta. In fact, the government conceded that it was a "person" for purposes of the Act so the court had no reason to engage in a full analysis of the scope of the term "any government." *Id.* The district court hit the nail on the head when it explained that:

> It is one thing to say "any government" means "the United States." That is an entirely natural reading of "any government." But it's another thing to say "any government" means "Indian Tribes." Against the long-held tradition of trib-

> al immunity … "any government" is equivocal in this regard. Moreover, it is one thing to read "the United States" when *Congress* says "government." But it would be quite another, given that ambiguities in statutes are to be resolved in favor of tribal immunity, to read "Indian tribes" when Congress says "government."

D. Ct. Order at 4 (R. 23, p.4) (emphasis in original).

Meyers argues that the district court dismissed his claim based on its erroneous conclusion that Indian tribes are not governments. He then dedicates many pages to arguing that Indian Tribes are indeed governments. Meyers misses the point. The district court did not dismiss his claim because it concluded that Indian tribes are not governments. It dismissed his claim because it could not find a clear, unequivocal statement in FACTA that Congress meant to abrogate the sovereign immunity of Indian Tribes. Meyers has lost sight of the real question in this sovereign immunity case—whether an Indian tribe can claim immunity from suit. The answer to this question must be "yes" unless Congress has told us in no uncertain terms that it is "no." Any ambiguity must be resolved in favor of immunity. *Cooper*, 132 S. Ct. at 1448. Abrogation of tribal sovereign immunity may not be implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Of course Meyers wants us to focus on whether the Oneida Tribe is a government so that we might shoehorn it into FACTA's statement that defines liable parties to include "any government." *See Bormes*, 759 F.3d at 795. But when it comes to sovereign immunity, shoehorning is precisely what we cannot do. Congress' words must fit like a glove in their unequivocality. *See Bay Mills*, 134 S. Ct. at 2031; *C & L Enters.*,

532 U.S. at 418. It must be said with "perfect confidence" that Congress intended to abrogate sovereign immunity and "imperfect confidence will not suffice." *Dellmuth v. Muth*, 491 U.S. 223, 231 (1989), superseded by statute on other grounds as recognized in *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 45, n.14 (1992). Congress has demonstrated that it knows how to unequivocally abrogate immunity for Indian Tribes. It did not do so in FACTA.

This leaves one last loose end. Meyers argues that the Fair Credit Reporting Act is a statute of general applicability and thus is assumed to apply to Indian tribes. *See Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932 (7th Cir. 1989), *superseded by statute on other grounds*, Pub. L. No. 109–280, § 906(a)(2)(A), 120 Stat. 780, 1051 (2006), *as recognized in Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 881 (E.D. Wis. 2009) ("when Congress enacts a statute of general applicability, the statute reaches everyone within federal jurisdiction not specifically excluded, including Indians and Tribes."). As the district court correctly pointed out, "the question here is not whether the Tribe is subject to FCRA; it is whether Plaintiff can sue the Tribe for violating FCRA." D. Ct. Order at 6 (R. 23, p.6). "[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1130 (11th Cir. 1999) (emphasis in original); *see also Kiowa Tribe v. Manufacturing Tech., Inc.*, 523 U.S. 751, 755 (1998) ("There is a difference between the right to demand compliance with state laws and the means available to enforce them."); *In re Nat'l Cattle Cong.*, 247 B.R. at 265.

The Tribe has sovereign immunity and thus the district court's grant of the Tribe's motion to dismiss is AFFIRMED.