**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1822

ANTHONY ROBINSON,

       Plaintiff – Appellant,

  v.

UNITED STATES DEPARTMENT OF EDUCATION,

       Defendant – Appellee,

    and

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a Fed Loan Servicing; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC,

       Defendants.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge.  (8:15-cv-00079-GJH)

Argued:  January 29, 2019                    Decided:  March 6, 2019

Before WILKINSON, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge Wilkinson wrote the opinion, in which Judge Diaz and Judge Floyd joined.

**ARGUED:** Quinn Breece Lobato, LOBATO LAW LLC, Lanham, Maryland, for Appellant. Sarah Wendy Carroll, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

WILKINSON, Circuit Judge:

Appellant Anthony Robinson appeals the dismissal of his lawsuit against the U.S. Department of Education for violations of the Fair Credit Reporting Act (FCRA). The district court found that it lacked jurisdiction over the claim because Congress had not waived sovereign immunity for suits under FCRA. It is settled law that a waiver of sovereign immunity must be unambiguous and unequivocal. Because the purported waiver here falls well short of that standard, we affirm.

I.

This appeal arises from Robinson's claims against the Big Three credit reporting agencies—Experian, Equifax, and TransUnion—the Pennsylvania Higher Education Assistance Agency, and the U.S. Department of Education. The suit related to their treatment of an allegedly fraudulent student loan in Robinson's name. As all claims against the nonfederal defendants have now run their course, only Robinson's FCRA claims against the Department of Education remain on appeal.

The Department administers the William D. Ford Federal Direct Loan Program, through which it provides loans to students and parents for postsecondary education costs. Robinson's complaint detailed how the Department of Education "directly or indirectly causes credit information to be furnished to . . . consumer reporting agencies." J.A. 13, ¶ 7 (Amended Complaint). Robinson alleged that he "discovered that there were Direct Loan student loan accounts being reported to his Experian, Equifax, and Trans Union credit reports," J.A. 14, ¶ 8, even though he did not "authorize a student loan account to be opened in his name," *id.* ¶ 9. Appellant asserted that he "has been disputing

3

the Direct Loan accounts," "[s]ince November 2011 or earlier." *Id.* ¶ 10; see also J.A. 14-15, ¶¶ 11-14. In this action, he alleged that the Department violated FCRA, specifically 15 U.S.C. § 1681s-2(b), "by failing to fully and properly investigate [Appellant's] disputes," J.A. 17, ¶ 27, and "failing to review all relevant information" related to his claim, *id.* ¶ 28. The complaint brought claims under 15 U.S.C. §§ 1681n and 1681o, which provide civil causes of action for willful and negligent FCRA violations, respectively.

The Department filed a motion to dismiss for want of subject matter jurisdiction based on sovereign immunity. Fed. R. Civ. P. 12(b)(1). After comparing FCRA's language to several recognized waivers of sovereign immunity, the district court reasoned that FCRA's language did not unequivocally and unambiguously waive sovereign immunity. *Robinson v. Pa. Higher Educ. Assistance Agency*, No. GJH-15-0079, 2017 WL 1277429 (D. Md. Apr. 3, 2017). According to the district court, the plaintiff's reading of the waiver would, among other things, absurdly expose the federal government to criminal prosecutions. The court thus granted the government's motion and dismissed Robinson's claims against the Department. *Id.* Robinson asked the district court to reconsider its ruling, but that motion was denied. *Robinson v. Pa. Higher Educ. Assistance Agency*, No. GJH-15-0079, 2017 WL 5466673 (D. Md. Nov. 13, 2017). He now appeals.

II.

The only question presented on appeal is whether the United States has waived sovereign immunity for suits alleging that the federal government willfully or negligently

4

violated FCRA. See 15 U.S.C. §§ 1681n-1681o. We use "FCRA" to describe the statute as subsequently amended.

A.

The Supreme Court has recognized that sovereign powers have "traditionally enjoyed" a "common-law immunity from suit." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As Alexander Hamilton noted while advocating the ratification of the Constitution in Federalist 81, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." The Federalist No. 81, at 511 (B. Wright ed., 1961) (emphasis omitted). That foundational immunity is a "necessary corollary" to "sovereignty and self-governance." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (internal quotation marks omitted). As such, the federal government has long enjoyed freedom from suit without consent in federal courts. See, *e.g.*, *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 444 (1834) (Marshall, C.J.) ("As the United States are not suable of common right, the party who institutes such suit must bring his case within the authority of some act of [C]ongress, or the court cannot exercise jurisdiction over it.").

The Department of Education thus enjoys as a federal agency a presumption of immunity from the present lawsuit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Indeed, "the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A strong doctrine of sovereign immunity is nowhere more important than for damages claims. Money judgments against a sovereign allow "the judgment creditor" to compete with "other important needs and worthwhile ends . . . for

5

access to the public fisc." *Alden v. Maine*, 527 U.S. 706, 751 (1999); see *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428-32 (1990) (applying similar rationale to damages against the federal government). Instead, as the Framers recognized, the allocation of resources must be left to the will of the people. *Alden*, 527 U.S. at 751.

One way the people may exercise their will, however, is to consent to suit by waiving sovereign immunity. *Meyer*, 510 U.S. at 475. Damages suits against the United States, as with any litigant, may incentivize good behavior or appropriately compensate those who have been harmed. But it remains the province of the political branches, not the courts, to weigh the costs and benefits of exposing the federal government to civil litigation. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). In other words, waivers cannot contain an ambiguity, which "exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *FAA v. Cooper*, 566 U.S. 284, 290-91 (2012). Sovereign immunity, in short, can only be waived by statutory text that is unambiguous and unequivocal. The requirement exists, in part, to prevent the inadvertent imposition of massive monetary loss.

B.

Against this backdrop, we shall examine the purported waiver itself. Robinson contends that his claims were wrongly dismissed because the United States has indeed waived sovereign immunity to civil actions under FCRA's general liability provisions. See 15 U.S.C. §§ 1681n-1681o. The plaintiff bears the burden of showing that the

6

government has waived sovereign immunity at the motion to dismiss stage. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). We review the district court's ruling de novo. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005).

FCRA provides a series of requirements for handling consumer credit information in order to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Robinson claims the Department violated a provision that requires it, after being notified that a consumer disputes information relating to his credit, to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). FCRA § 1681o provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual damages, costs, and attorney's fees. For its part, § 1681n applies to willful FCRA violations, and adds punitive damages to the remedies for negligent violations under § 1681o. District courts have jurisdiction over any timely action properly brought under either provision. See 15 U.S.C. § 1681p.

This case centers on the meaning of the word "person" in § 1681n and § 1681o, specifically whether the federal government is a "person" for purposes of FCRA's general civil liability provisions. We begin our inquiry, as always, with the text of the statute. See *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 489 (4th Cir. 2014). Robinson attempts to isolate FCRA's definitional and civil liability provisions from the rest of the statute in arguing that FCRA's text is straightforward. FCRA's causes of action for willful and negligent violations apply to any "person." See 15 U.S.C.

7

§§ 1681n-1681o. The statute itself defines "person" to include "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). Since the federal government is a government, any government is a person, and as any person can be liable, so his argument goes, the federal government can be liable for FCRA violations.

But we do not interpret the word "person" on a blank slate. There is a "longstanding interpretive presumption that 'person' does not include the sovereign." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000); see *United States v. Cooper Corp.*, 312 U.S. 600 (1941) ("person" does not include United States under the Sherman Act). This canon applies even when "person" is elsewhere defined by statute. "In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." *Bond v. United States*, 572 U.S. 844, 861 (2014). While we need not determine the exact contours of the ordinary meaning of "person" for present purposes, see 1 U.S.C. § 1 (general definition of "person" throughout the United States Code), suffice it to say that the United States is not ordinarily considered to be a person. On this ordinary understanding, FCRA's enforcement provisions thus would not apply to the federal government. If it is plausible that Congress used "person" according to its ordinary meaning, then sovereign immunity has not been unambiguously waived. *Cooper*, 566 U.S. at 290-91.

8

We observe, moreover, that statutes waiving sovereign immunity are normally quite clear. Take, for example, the Little Tucker Act, which "provides that '[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any Act of Congress.'" *United States v. Bormes*, 568 U.S. 6, 7 (2012) (quoting 28 U.S.C. § 1346(a)(2)). At its core, the Little Tucker Act specifically describes claims "against the United States." *Id.* The same is true of the Federal Tort Claims Act: "The United States [is] liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Indeed the words "United States" appear in a great many waivers. *E.g.*, 12 U.S.C. § 3417(a) ("Any agency or department of the United States . . . is liable to the customer . . . ."); 42 U.S.C. § 9620(a)(1) ("Each department, agency, and instrumentality of the United States . . . shall be subject to . . . liability under section 9607."); see also 26 U.S.C. § 7433(a) (waiver describing "United States"); 46 U.S.C. § 30903(a) (same).

The alleged waivers in the present case, by contrast, describe only liability against a "person." See 15 U.S.C. §§ 1681n-1681o. Even the definition section on which Robinson relies does not specifically mention the United States or the federal government. See 15 U.S.C. § 1681a(b). And, as the Ninth Circuit recently noted, when Congress means to waive sovereign immunity in a provision otherwise applying to persons it says so explicitly. *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 772 (9th Cir. 2018); see 33 U.S.C. § 1365(a)(1) (Clean Water Act) ("[A]ny citizen may commence a civil action on his own behalf . . . against any person (including (i) the United States, and

9

(ii) any other governmental instrumentality or agency . . . )."); 42 U.S.C. § 6972(a)(1)(A) (Resource Conservation and Recovery Act) ("[A]ny person may commence a civil action on his own behalf . . . against any person (including (a) the United States, and (b) any other governmental instrumentality or agency . . . )."). Robinson's argument, at best, relies upon a far more abbreviated and less clear expression to establish a waiver in his case. This is hardly evidence of an unequivocal intent to waive federal sovereign immunity in the same way as statutes that specifically describe actions against the "United States."

There is, however, one explicit waiver of sovereign immunity elsewhere in FCRA that does not apply to Robinson's claims. Section 1681u empowers the Federal Bureau of Investigation to obtain information from consumer reporting agencies in connection with its counterterrorism efforts. This section includes a clear waiver: "Any agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of [§ 1681u] is liable to the consumer to whom such consumer reports, records, or information relate" for statutory, actual, and sometimes punitive damages. 15 U.S.C. § 1681u(j). Here again the waiver spells out that "the United States . . . is liable to the consumer." *Id.* There is no need to quibble over how Congress used a word. There is no need to hypothesize whether Congress considered the provision's effects on the federal government. Unlike the asserted waivers on which Robinson relies, the import of § 1681u(j) is plain as day.

This is not to say that waivers of sovereign immunity must "use magic words," *Cooper*, 566 U.S. at 291, that existing waivers serve as a series of litmus tests, or even

10

that a statute must use the same waiver language throughout. There are no such requirements under law. But courts are to "presume congressional familiarity" with the need for waivers of sovereign immunity to be unambiguous and unequivocal. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). The stark contrasts between FCRA's civil liability provisions and recognized waivers serve as strong evidence that Congress did not waive sovereign immunity under FCRA.

Indeed, in the universe of possible waivers, this would be a very casual one. Yet the consequences of waiving immunity under FCRA's general liability provisions are anything but casual: the federal government is the nation's largest employer and lender. The Department represents that "[i]n fiscal year 2017, for example, the delinquent non-tax debt owed to the federal government totaled $185 billion." Brief for Appellee, at 23. It notes that federal agencies sometimes are required by law to report delinquent debts to the consumer reporting agencies. See, *e.g.*, 20 U.S.C. § 1080a. Each report, of course, would give rise to potential liability under FCRA. There is no telling the true costs of a waiver, especially when considering the punitive damages generally allowed under § 1681n.

## C.

The consequences of Robinson's proposed reading, moreover, extend further when we consider other applications of FCRA's enforcement provisions. See *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) (recognizing the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *id.* at 133 (internal

11

quotation marks omitted)). Robinson's reading of the statute would raise a host of new issues ranging from the merely befuddling to the truly bizarre. We thus follow the Supreme Court's lead in being "especially reluctant to read 'person' to mean the sovereign where, as here, such a reading is decidedly awkward." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 83 (1991) (internal quotation marks omitted).

And awkward it is. Take, for example, the prospect of the government bringing criminal charges against itself. The Act's enforcement provisions, after all, facially authorize criminal proceedings against "[a]ny person." 15 U.S.C. § 1681q. Imagine a court's puzzlement upon seeing a criminal case captioned "*United States v. United States*." See *Cooper Corp.*, 312 U.S. at 609 ("It must be obvious that the United States cannot be embraced by the phrase 'any person'" when a statute criminalizes conduct by "any person." *Id.*). Robinson points out that other courts, upon finding waiver under FCRA, have dismissed this problem because a prosecution could be brought against federal employees. See, *e.g.*, *Bormes v. United States*, 759 F.3d 793, 796 (7th Cir. 2014). But, adopting Robinson's reading *arguendo*, the statute allows prosecution of "any government," not *the employees of* any government. The pro-waiver camp cannot have it both ways—literal most often, just not when it suits to blur the lines.

FCRA also empowers several federal agencies to enforce its various provisions, including, most notably, the Federal Trade Commission and the Consumer Finance Protection Bureau. See 15 U.S.C. § 1681s(a)(1) (FTC enforcement), § 1681s(b)(1)(H) (CFPB enforcement). If the prospect of the CFPB pursuing a civil action against the

12

United States is any less odd than a criminal prosecution of the United States, it is not by much. To make matters worse, states also play a role in enforcing FCRA's various provisions. See 15 U.S.C. § 1681s(c). It would be anomalous for the federal government to expose its fisc to the suits of state attorneys general in such an offhanded manner. And once again, FCRA litigants under plaintiff's reading could even pursue punitive damages against the federal government, see 15 U.S.C. § 1681n, which would trample yet another presumption, this time "against imposition of punitive damages on governmental entities." *Vt. Agency of Nat. Res.*, 529 U.S. at 785.

Regrettably the problems with Robinson's proposal do not end there. Robinson's arguments equally would expose "any government" to liability, including foreign, tribal, and state governments. The first implication would require courts to compromise treaties and to undermine principles of international comity. See *Samantar v. Yousuf*, 560 U.S. 305, 311-25 (2010) (describing common-law and statutory immunities afforded to foreign governments). The second, to cast aside a history of tribal immunity. See *Bay Mills Indian Cmty.*, 572 U.S. at 788-91 (discussing tribal sovereign immunity). The third, to ignore constitutional limits on federal abrogation of state sovereign immunity. See *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 47, 72 (1996) (holding that Congress lacks the power to abrogate state sovereign immunity under the Commerce Clause).

The *Seminole Tribe* decision, in fact, came down not long before Congress amended the Act that Robinson now contends waives governmental sovereign immunity. See Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-426. Robinson would therefore have us suppose that Congress, in an

13

insurrectionary moment, set out to defy a prominent Supreme Court ruling that held Congress lacked the very authority Robinson now asserts it exercised. On a broader level, Robinson would have FCRA expose not only the United States but foreign, tribal, and state governments to punitive damages, criminal penalties, and an array of other monetary sanctions for activities "in which governments are uniquely involved on a massive scale." Brief for Appellee, at 30. To read these broad and staggering implications into the statute on the slimmest of textual hints would be to abjure our duty to construe "the statutory language with that conservatism which is appropriate in the case of a waiver of sovereign immunity." *United States v. Sherwood*, 312 U.S. 584, 590 (1941).

We are not, of course, required to reach any of those confounding problems Robinson's reading presents in the instant case. But we should not interpret the statute today in a way that will create serious new difficulties tomorrow. The statute bears no indicia of congressional intent to bring about such a bevy of implausible results, let alone an unambiguous and unequivocal intent to do so.

Faced with abundant evidence from FCRA's text and structure, Robinson argues that FCRA's enforcement provisions must apply to the federal government because the federal government is a person under several of FCRA's substantive provisions. Cf. *Bormes*, 759 F.3d at 795 ("The United States concedes that it is a "person" for the purpose of [FCRA's] substantive requirements."). But the substantive and enforcement provisions in FCRA are not one and the same. All of the problems discussed above relate to the statute's enforcement provisions. And Robinson's argument does not even begin to

account for the untoward consequences of, *inter alia*, reading the statute's enforcement provisions to set the federal government in courts of law against itself.

Moreover, just as the ordinary meaning of "person" has always applied to FCRA's enforcement provisions, the statutory definition of "person" has always applied to FCRA's substantive provisions. To take but one example, FCRA § 604(3)(D) specifically provided that consumer reporting agencies could give information to a "person" for "a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status." Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1127, 1129 (1970). Who, other than a government, would be required by law to use credit information to determine eligibility for government benefits? Our reading of the word "person" thus does not create a textual anomaly, but rather reflects a holistic statutory view that undermines Robinson's attempt to transport the meaning of "person" from FCRA's substantive measures to its enforcement provisions.

Both parties also raise arguments by analogizing FCRA's statutory scheme to that of other federal statutes, drawing on its general purposes, and plucking out various tidbits from its legislative history. But we do not rest our opinion on those bases. We think that these arguments, at best, are of decidedly marginal relevance and secondary importance. FCRA's text and structure make clear that no unambiguous and unequivocal waiver of sovereign immunity has taken place.

D.

The parties debate extensively several cases from other circuits addressing this issue. The Ninth Circuit, for example, adopted a reading of the statute similar to our own. The court employed a holistic approach in interpreting FCRA to preserve federal sovereign immunity. *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018). It reasoned that "[d]istilling a clear waiver of sovereign immunity in the FCRA would require us to treat 'the United States' as a 'person' in each provision." *Id.* at 770. The Ninth Circuit rejected that interpretation after reviewing the myriad absurd results of reading "person" to include the United States throughout the enforcement provisions of the statute. *Id.* at 768-74.

It is true that the Seventh Circuit initially adopted the view that FCRA did set forth a waiver of federal sovereign immunity. *Bormes*, 759 F.3d at 796. But when faced with the actual consequences of that ruling, the Seventh Circuit retreated from *Bormes* by upholding tribal sovereign immunity under FCRA, even though federal and tribal governments equally qualify as "any government" under *Bormes'* reading of the statute. *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 823-27 (7th Cir. 2016). Reading "any government" to allow suits against tribes, in the view of *Meyers*, would be "shoehorning" a tribal immunity waiver where it failed utterly to fit. *Id.* at 827. "But when it comes to sovereign immunity, shoehorning is precisely what we cannot do." *Id.* As the Ninth Circuit recognized in *Daniel*, the Seventh Circuit's logic regarding tribal sovereign immunity should apply equally to the United States. 891 F.3d at 774.

16

III.

For the foregoing reasons, the judgment of the district court dismissing this case for want of subject matter jurisdiction is

*AFFIRMED*.