**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1154**

MICHAEL S. PECK, Ph.D.,

      Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, ADMINISTRATIVE REVIEW
BOARD; MARTY WALSH, U.S. Secretary of Labor,

      Respondents.

On Petition for Review of an Order from the United States Department of Labor,
Administrative Review Board. (2017-0062)

Submitted:  March 12, 2021                  Decided:  April 30, 2021

Amended:  June 21, 2021

Before WILKINSON, AGEE, and FLOYD, Circuit Judges.

Petition denied by published opinion.  Judge Wilkinson wrote the opinion, in which Judge
Agee and Judge Floyd joined.

John M. Clifford, Billie P. Garde, CLIFFORD & GARDE, LLP, Washington, D.C.; John
A. Kolar, GOVERNMENT ACCOUNTABILITY PROJECT, Washington, D.C.; Ned
Miltenberg, Managing Partner, NATIONAL LEGAL SCHOLARS LAW FIRM, P.C.,
Bethesda, Maryland, for Petitioner.  Kate S. O'Scannlain, Solicitor of Labor, Elena S.
Goldstein, Deputy Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Sarah K.

Marcus, Deputy Associate Solicitor, Megan E. Guenther, Counsel for Whistleblower Programs, James M. Morlath, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

WILKINSON, Circuit Judge:

Petitioner Dr. Michael Peck is a Nuclear Regulatory Commission (NRC) employee who made disclosures to Congress and the NRC's Inspector General regarding health and safety risks at a nuclear power plant. After the NRC rejected his applications for promotions, he brought a whistleblower-retaliation complaint under 42 U.S.C. § 5851. The Administrative Law Judge (ALJ) dismissed the case because the United States had not waived sovereign immunity for such whistleblower actions against the NRC. The Administrative Review Board (ARB) affirmed, and Peck petitioned for review before this court. Because we agree with the ARB that Congress has not waived sovereign immunity for complaints against the NRC, we deny the petition for review.

I.

Dr. Peck has worked for the NRC as a nuclear engineer since 2000. From 2007 to 2012, he served as the Senior Resident Inspector at the Diablo Canyon Nuclear Power Plant. After he left the plant, he took three protected actions regarding concerns he had with the safety conditions there. First, in 2013 and 2014, he filed a formal Differing Professional Opinion with the NRC. Second, in January 2015, Peck sent a letter to the Senate Committee on Environment and Public Works, which oversees the NRC. Third, in 2015 and 2016, he provided testimony to the NRC Inspector General.

Since leaving the Diablo Canyon plant, Peck has served as a Senior Reactor Technology Instructor at the NRC's Chattanooga, Tennessee, office. In 2016 and 2017, he applied for two promotions at the NRC. Peck submitted an application in October 2016 for a Senior Resident Inspector (SRI) position at the Callaway Nuclear Plant in Missouri.

3

In March 2017, he applied for the same position at a plant in Arkansas. He was passed over in both cases.

In 2017, Peck filed a complaint with the Department of Labor pursuant to the Energy Reorganization Act of 1974 (ERA), 42 U.S.C. 5801 *et seq.*, *as amended by* Act of Nov. 6, 1978, Pub. L. No. 95-601, 92 Stat. 2947, *and* the Energy Policy Act of 2005 (EPA), Pub. L. No. 109-58, 119 Stat. 594. He alleged that his non-selection for promotion was in retaliation for his protected disclosures about insufficient safety conditions at Diablo Canyon. In support of this claim, Peck argued that the supervisors in charge of selection knew of his protected activity and retaliated against him by choosing engineers with inferior qualifications and less experience for the two SRI positions.

On July 13, 2017, the ALJ granted the NRC's motion to dismiss on the grounds that the 2005 amendments to the ERA did not waive the federal government's sovereign immunity for suits against the NRC. Peck appealed this decision to the ARB. Due to the significance of the issue, the ARB heard the case *en banc* and affirmed the ALJ over one dissent. *See* J.A. 329–52. Peck timely filed a petition for review of the ARB's order in this court pursuant to 42 U.S.C. § 5851(c).

## II.

The parties have not questioned our power to decide the case. However, federal courts "have an independent obligation to verify the existence of" their own jurisdiction. *Williamson v. Stirling*, 912 F.3d 154, 168 (4th Cir. 2018) (quoting *Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015)). As such, we identified our concerns *sua sponte* and requested

the parties to submit supplemental briefing on whether this court has jurisdiction over this petition.

The statute authorizing Article III review of ARB decisions provides that aggrieved employees can seek review "in the United States court of appeals for the circuit in which the violation . . . allegedly occurred." 42 U.S.C. § 5851(c). Based on the facts alleged by the petitioner, it is unclear that any of the allegedly illegal actions took place within the states of the Fourth Circuit.

We need not parse the location of the actions of Peck's supervisors because we conclude that § 5851(c) speaks not to jurisdiction but to venue. In *Davlan Eng'g, Inc. v. NLRB*, 718 F.2d 102 (4th Cir. 1983), this court considered a nearly identical statute that governs review of orders by the National Labor Relations Board. That statute provides that "any person aggrieved by a Board order may obtain review 'in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business.'" *Id.* at 103 (quoting 29 U.S.C. § 160(f)). We treated that language as a "venue requirement[]." *Id.* The same is true for the statute providing review of immigration judges' decisions. *See Sorcia v. Holder*, 643 F.3d 117, 121 (4th Cir. 2011) (stating "that a 'petition for review [of an order of removal] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings'" (quoting 8 U.S.C. § 1252(b)(2))). Since there are no meaningful distinctions between the language of those statutes and § 5851(c), the latter statute is also a venue provision and poses no jurisdictional problems for this court.

Assured that we are seized of jurisdiction over this petition, we briefly note that it is a long-held rule that venue is a "personal privilege" that a party may waive. *Senitha v. Robertson*, 45 F.2d 51, 53 (4th Cir. 1930). In its supplemental brief, the Department of Labor has done just that and both parties request that we resolve the question presented. *See* Resp't Suppl. Br. at 6; Pet'r Suppl. Br. at 5. This court has also placed another case raising an identical sovereign immunity issue in abeyance pending the outcome of this case. *See* Order, *Criscione v. Nuclear Regulatory Comm'n*, No. 20-2320 (4th Cir. Dec. 11, 2020). Because this case is already fully briefed, and the parties have requested that we resolve it, and another case in our circuit turns on its outcome, we find that judicial economy warrants our resolution of the petition.

III.

We review the ARB's decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2). *See* 42 U.S.C. § 5851(c)(1). Under that framework, "we may only disturb the ARB's decision if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Welch v. Chao*, 536 F.3d 269, 275–76 (4th Cir. 2008). This case presents a pure question of law, which we review *de novo*. *Id.* at 276.

A.

It is axiomatic that "the United States [is] not suable of common right" but that "the party who institutes such a suit must bring his case within the authority of some act of [C]ongress." *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 444 (1834) (Marshall, C.J.). This is because "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." The Federalist No. 81, at 486 (Alexander Hamilton)

6

(Clinton Rossiter ed., 1961) (emphasis omitted). This was a principle so obvious to the Founding generation that it needed no mention—its presence was assumed. *See* Stephen E. Sachs, *Constitutional Backdrops*, 80 Geo. Wash. L. Rev. 1813, 1868–75 (2012).

It is also well-settled that "the terms of its consent to be sued" are jurisdictional. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). And the Supreme Court has made crystal clear "that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992). All ambiguities in the statutory text must be construed "in favor of immunity." *United States v. Williams*, 514 U.S. 527, 531 (1995).

Here we deal with the sovereign's immunity from suits for money damages. This immunity is of paramount importance in a democratic republic. In any pluralistic society, the people have many interests competing for the expenditure of the government's limited funds. The Framers saw fit to assign the power to balance those interests to the most representative branch—the legislature. *See* U.S. Const. art. I, § 9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."). Allowing a private litigant to bring a claim against the U.S. Treasury without statutory authorization would violate this most important of principles. *See Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1851) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned."). This "is to assure that public funds will be spent according to the letter of difficult judgments reached by Congress as to the common good and not according to . . .

the individual pleas of litigants." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990).

Congress, however, may express the people's will in many forms. At the beginning of the Republic, Congress passed private bills in response to individual petitions. *See* Richard H. Fallon, Jr., et al., Hart & Wechsler's The Federal Courts and the Federal System 89 (7th ed. 2015). That has since given way to broader schemes of congressional consent via statutory waiver. *See, e.g.*, Federal Tort Claims Act, Pub. L. No. 79-601, 60 Stat. 842 (1946); Tucker Act, ch. 359, 24 Stat. 505 (1897). These acts served to simplify resolution and relieve the burden on Congress that an expanding number of petitions would otherwise have imposed. *See Brownback v. King*, 141 S. Ct. 740, 745–46 (2021); Fallon, *supra*, at 89.

Despite the existence of both private bills and broad schemes of statutory waiver, there nonetheless exist statutes between these two poles. Such statutes deal with more than a single person's case yet are not solely concerned with governmental liability. The Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1127 (1970), is one such statute. *See Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (2019). And the ERA is another such statute. Not only must these statutes regulate governmental behavior, their "waiver of sovereign immunity must extend unambiguously to . . . monetary claims." *Lane*, 518 U.S. at 192. This requirement exists, in part, to prevent a scheme encompassing certain private entities from extending inadvertently to the federal government.

B.

Considering this framework, we turn to the purported wavier of sovereign immunity. "We start, of course, with the statutory text." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). When a statute does not define a word, we turn first to its "ordinary meaning." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011); *see also United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994) ("Generally, in examining statutory language, words are given their common usage."). The Dictionary Act, 1 U.S.C. § 1, often aids courts in determining that ordinary meaning. *See, e.g.*, *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012) (determining whether organizations are suable as "individuals" under the Torture Victims Protection Act); *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993) (determining whether artificial entities are "persons" allowed to appear *in forma pauperis* under 28 U.S.C. § 1915).

The relevant statutory language here comes from the NRC's 1978 appropriations. Congress amended the ERA to "encourage[] employees to report safety violations and provide[] a mechanism for protecting them against retaliation for doing so." *English v. Gen. Elec. Co.*, 496 U.S. 72, 82 (1990) (discussing Act of Nov. 6, 1978, Pub. L. No. 95-601, 92 Stat. 2947, 2951 § 210 (codified as amended at 42 U.S.C. § 5851)). The statute prohibits employers from discharging or discriminating against employees who engage in certain protected behaviors such as testifying before Congress or notifying their employers of alleged violations of federal law. 42 U.S.C. § 5851(a)(1). The statute also explicitly defines "employer" for the purposes of the section to include the NRC. *Id.* § 5851(a)(2)(F).

9

As such, it is clear that the prohibitions against retaliation apply to Peck's employer, the NRC.

However, this is not the end of the inquiry. As we have noted, the inclusion of a government agency as a regulated entity is not sufficient to find that Congress has waived sovereign immunity for the purposes of enforcement. *See Robinson*, 917 F.3d at 806 (analyzing the substantive and remedial provisions of the FCRA independently). As such, we must look closely at the remainder of § 5851.

First, we look at the terms used in subsection (b), which provides the complaint, filing, and notification procedures for an employee seeking to bring action under § 5851. From the outset, it is clear that the statute does not contemplate the government as a possible respondent in such an action because the statute uses "person" rather than "employer" in the pertinent subsections. The employee must claim to "ha[ve] been discharged or otherwise discriminated against by any *person*." 42 U.S.C. § 5851(b)(1) (emphasis added). The Secretary of Labor must "notify the *person* named in the complaint" and conduct an investigation of "the *person* alleged to have committed [a] violation." *Id.* § 5851(b)(1), (2)(A) (emphasis added). If the Secretary finds a violation, he is to "order the *person* who committed such violation to" take remedial action. *Id.* § 5851(b)(2)(B) (emphasis added). Unlike subsection (a) which addresses "employers," most of the remedial subsection addresses "persons."

In contrast, even part of subsection (b) does address employers. The use of the two different words—"employer" and "person"—in close proximity indicates that Congress was conscious of the difference. There is a provision for "the employer [to] demonstrate[]

10

. . . that it would have taken the same unfavorable personnel action" for a variety of legitimate reasons. *Id.* § 5851(b)(3)(B). And another provision prohibits relief for the employee if "the employer" makes that showing. *Id.* § 5851(b)(3)(D).

Subsections (c) and (d) support this distinction by utilizing person. The review provision allows "[a]ny *person* adversely affected or aggrieved by an order issued under subsection (b)" to seek review in the appropriate court of appeals. *Id.* § 5851(c)(1) (emphasis added). The jurisdiction provision allows the Secretary to file an enforcement action in district court "[w]henever a *person* has failed to comply with an order." *Id.* § 5851(d) (emphasis added). In sum, § 5851 distinguishes between employers and persons.

We reject petitioner's contention that these terms should be given the same meaning. *See* Pet'r Br. at 21. It is well-established that "[w]here Congress has utilized distinct terms within the same statute, the applicable canons of statutory construction require that we endeavor to give different meanings to those different terms." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) (citing *Nordic Village*, 503 U.S. at 36); *see also Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 509 (4th Cir. 2011) (applying the canon to motor regulations). This different-terms canon is grounded in the understanding that Congress acts deliberately—"where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Soliman*, 419 F.3d at 283 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). If that is true in different sections of the same act, it is undisputable that this canon would apply within a single section of an act. We thus conclude that the inclusion of the NRC as

11

an "employer" in the substantive subsection cannot alone justify the treatment of the NRC as a "person" in the remedial subsection.

Our inquiry thus turns on whether the NRC is a person independent of its status as an employer. There is a general presumption that the word "'person' does not include the sovereign." *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1861–62 (2019) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780–81 (2000)). This is no sapling of an interpretive rule—rather, it is a storied redwood of nineteenth-century origin. *See United States v. Fox*, 94 U.S. (4 Otto) 315, 321 (1876) ("The term 'person' as here used applies to natural persons, and also to artificial persons, . . . but cannot be so extended as to include within its meaning the Federal government. It would require an express definition to that effect to give it a sense thus extended."). We thus do not deviate from the general presumption lightly.

The presumption is based, first and foremost, on the word's "common usage," which "does not include the sovereign." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947); *see also Va. Office for Protection & Advocacy v. Reinhard*, 405 F.3d 185, 189 (4th Cir. 2005) (holding that, as sovereign, Virginia agency is not a "person" capable of bringing suit under § 1983). Dictionaries support this contention. *See, e.g.*, *Person*, Black's Law Dictionary (10th ed. 2014). Finally, Congress has expressed its intention in the Dictionary Act by providing a default definition for "person" in federal law. *See Return Mail*, 139 S. Ct. at 1862. "[T]he words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Notably absent is any mention of sovereigns.

12

An application of the *expressio unius est exclusio alterius* canon thus informs us that sovereigns are not covered by the term "person." *See Mine Workers*, 330 U.S. at 275 ("The absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them."); *see also Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) (applying favorably the *expressio unius* canon); *In re Wood*, --- F.3d ----, 2021 WL 1287182, at *4 (4th Cir. Apr. 7, 2021) (same). All of this accords with common sense. Characterizing the government as a person gives it too much credit. Whereas a person is understood to be a unique individual or single entity, the government is impersonally composed of untold millions of persons. In sum, "the Government is not a 'person' . . . absent an affirmative showing to the contrary." *Return Mail*, 139 S. Ct. at 1863.

## C.

The petitioner has failed to make the necessary affirmative showing with the required "unequivocal[] express[ion]." *Cooper*, 566 U.S. at 290. Inasmuch as the remedies and enforcement sections of the Act are directed at persons, not the government, it is hard to distill from the statute any waiver of sovereign immunity. Contrary to petitioner's suggestions, this view is in accord with Fourth Circuit and Supreme Court precedent, and it does not create absurd results. Our recent decision in *Robinson* shows why this is so.

In that case, the plaintiff sued the Department of Education for violating the FCRA. *See Robinson*, 917 F.3d at 800. The FCRA establishes "a series of requirements for handling consumer credit information" and requires investigation when a consumer believes that there is incorrect "information relating to his credit." *Id.* at 802 (discussing

13

15 U.S.C. § 1681s-2(b)(1)(A)). The Act also creates civil liability for "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter." *Id.* (quoting 15 U.S.C. § 1681o). We had to determine "whether the federal government is a 'person' for purpose of FCRA's general civil liability provisions." *Id.*

Although "[t]he statute itself define[d] 'person' to include 'any . . . government or governmental subdivision or agency," *id.* (quoting 15 U.S.C. § 1681a(b)), we nonetheless held that the statute did not unequivocally waive sovereign immunity, *id.* at 803. We reached this conclusion because the ordinary meaning of "person" does not include the federal government, statutes waiving sovereign immunity are normally clear in using the words "United States," and a different provision of the FCRA includes a waiver of immunity that "spells out that 'the United States . . . is liable to the consumer.'" *Id.* at 804 (quoting 15 U.S.C. § 1681u(j)); *see id.* at 803–04. Furthermore, we noted that including the government within the meaning of "person" "would raise a host of new issues ranging from the merely befuddling to the truly bizarre" such as allowing the government to bring criminal or civil enforcement proceedings against itself, compromising treaties, undermining international comity, and ignoring limits on federal abrogation of state sovereign immunity. *Id.* at 804; *see id*. at 804–05. Altogether, we concluded that there was "no unambiguous and unequivocal waiver of sovereign immunity." *Id.* at 806. The presumption against waiver of sovereign immunity applied even when the "person" was explicitly defined to include the government. Thus, it applies all the more so in statutes where the term is left undefined.

14

The lesson of *Robinson* is that the substantive and remedial provisions of a statute may not be coextensive. There is no doubt that the NRC is bound by the prohibitions of § 5851. But that fact alone is simply insufficient to form the basis of an unequivocal waiver of sovereign immunity. This is no new contention—the Supreme Court held as much over twenty years ago in *Lane v. Peña*. The *Lane* Court faced a similar statutory scheme: the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355 (codified as amended at 29 U.S.C. § 791 *et seq.*), forbade "discrimination on the basis of disability 'under any program or activity conducted by any Executive agency.'" 518 U.S. at 189 (quoting 29 U.S.C. § 794(a)). That the substantive prohibition of the Act covered the federal government could not have been clearer. Nonetheless, the Supreme Court held that the remedial section of the Act—§ 505(a)(2)—did not contain "the 'unequivocal expression' of elimination of sovereign immunity that [the Court] insist[s] upon . . . in statutory text." *Id.* at 192 (quoting *Nordic Village*, 503 U.S. at 37). The remedial section did not make mention of "program[s] or activit[ies] conducted by any Executive agency" like the substantive section did. *Id.* (alterations in original). This was in sharp contrast to other sections of the Rehabilitation Act, in which Congress did expressly waive immunity. *Id.* at 193 (discussing 29 U.S.C. § 505(a)(1)). The import of *Robinson* and *Lane* is clear: (1) a substantive prohibition extending to the government is not inherently a waiver of sovereign immunity; and (2) the waiver of sovereign immunity as to one provision in an act does not equate to the waiver as to all provisions.

The petitioner suggests that our reading renders the amendments to § 5851 in the EPA meaningless. *See* Pet'r Br. at 26–28; Pet'r Reply Br. at 20–22. To review, the EPA

15

added, *inter alia*, the NRC as a regulated party under § 5851(a). § 629, 119 Stat. at 785. Peck argues that our finding no waiver of sovereign immunity makes the addition of the NRC to the substantive section a useless and merely symbolic amendment. As a matter of both law and logic, that is simply not the case. *Alexander v. Sandoval*, 532 U.S. 275 (2001), established that Congress can create a private right with no private remedy without enacting a nullity. Federal agencies may enforce the right. *See id.* at 289–90. The NRC has an Inspector General who could use the prohibition as a basis for internal discipline against or even termination of supervisors who violate the whistleblower protections. All told, the petitioner is incorrect to suggest that there is no remedy to accompany the statute's protection—it just is not the remedy the petitioner wants. That does not a waiver of sovereign immunity make.

## IV.

Safety at nuclear facilities is of paramount importance. Violations of safety protocols there can have catastrophic consequences. Accidents at Three Mile Island and Chernobyl are evidence enough of that. The magnitude of those accidents explains, in part, why the nuclear industry is so heavily regulated. Whistleblower protections can help prevent such tragedies by allowing engineers, scientists, and others working at facilities to report safety violations without fear of reprisal. No person should lose their job or have their career progression stalled for following the appropriate procedures for safety reporting.

We are not saying what the right thing to do is here. The remedies afforded whistleblowers are far from non-existent. But Congress can, if it wishes, add protections

16

in the form of a private right of action against the NRC itself.  Waiving sovereign immunity is a legislative, not a judicial, prerogative.  And the legislature has not exercised that prerogative here.  For the foregoing reasons, we must deny Peck's petition for review and affirm the ARB's order.

*PETITION DENIED*