**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1147
_____

JACOBS PROJECT MANAGEMENT CO.,
Petitioner

v.

UNITED STATES DEPARTMENT OF THE INTERIOR;
JOHN R. WEBER
_____

Petition for Review of a Final Order
of the U.S. Department of the Interior
DOI Case No. OI-VA-16-0167-I
_____

Argued March 6, 2023
_____

Before: SHWARTZ, BIBAS, and AMBRO, <u>Circuit Judges</u>.

(Filed: April 3, 2023)

Ryan T. Bergsieker
Gibson Dunn & Crutcher
1801 California Street

Suite 4200
Denver, CO 80202

Andrew T. Brown
Zachary C. Freund
Julian W. Poon [**ARGUED**]
Gibson Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA 90071

   Counsel for Petitioner

Edward Himmelfarb [**ARGUED**]
United States Department of Justice
Civil Division
Room 7541
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Abby C. Wright
United States Department of Justice
Civil Division
Room 7252
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

   Counsel for Respondent U.S. Department of Interior

John R. Weber
5 Harrison Avenue
East Brunswick, NJ 08816

   Pro Se Intervenor-Respondent

2

_____

OPINION OF THE COURT
_____

**SHWARTZ**, <u>Circuit Judge</u>.

Jacobs Project Management Co. ("Jacobs") petitions for review of an order by the United States Department of the Interior ("DOI") that found that Jacobs retaliated against a former employee for whistleblowing in violation of 41 U.S.C. § 4712. Jacobs asserts that the DOI lacked jurisdiction to issue the order because it and the Office of the Inspector General ("OIG") acted after various statutory deadlines in § 4712 had passed. Because the deadlines are not jurisdictional, the DOI had the authority to issue its order. We will therefore deny the petition.

I

A

We begin with an overview of the various deadlines that apply to reprisal claims against federal contractors, like Jacobs. By way of background, Congress enacted § 4712 as part of the National Defense Authorization Act for Fiscal Year 2013 as a "Pilot program for enhancement of contractor protection from reprisal for disclosure of certain information." Pub. L. No. 112-239, 126 Stat. 1632, 1837 (2013). Section 4712(a) prohibits contractors from engaging in reprisals against their employees for disclosing "gross mismanagement of a Federal contract" or any other "violation of a law, rule, or regulation

3

related to a Federal contract." 41 U.S.C. § 4712(a). Under the statute, a person who believes he has been subject to a reprisal can file a complaint with the OIG of the relevant agency. Id. § 4712(b)(1). "[W]ithin 180 days after receiving the complaint," the OIG "shall" investigate the complaint and submit a report. Id. § 4712(b)(1)-(2)(A). The OIG may have an additional period of "up to 180 days" to issue the report if the complainant agrees. Id. § 4712(b)(2)(B). "Not later than 30 days after receiving an [OIG] report . . . the head of the executive agency concerned shall determine whether there is sufficient basis" to conclude that there was a prohibited reprisal, and "shall [] issue an order" denying or granting relief. Id. § 4712(c)(1). If the agency head denies relief or "has not issued an order within 210 days after the submission of a complaint," or, if there was an extension, "not later than 30 days after the expiration of the extension of time," then "the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint," and he "may" file suit "against the contractor . . . to seek . . . relief . . . in the appropriate district court of the United States," but must do so within two years after the date on which his remedies are deemed to have been exhausted. Id. § 4712(c)(2).

B

With the statutory background in mind, we now turn to the relevant facts. In March 2014, one of the National Park Service's service centers ("NPS") entered a contract with Perini Management Services to perform work on Ellis Island. The NPS hired Jacobs Technology Inc., an entity related to Jacobs, to provide contract management services on the Perini contract. Jacobs assigned John Weber as the lead contract management representative on the project. Weber observed

4

what he believed to be discrepancies between Perini's work and its billing practices and disclosed those discrepancies to the DOI's OIG in August 2014. Weber informed his direct supervisor, Roger Haddock, that he had spoken with the OIG, and Haddock told Weber not to speak with the OIG again without a company attorney present. Despite this directive, Weber continued to raise concerns over Perini's billing practices and met with the OIG again in October 2015. The OIG discussed the alleged billing issues with the NPS and concluded that there was no misconduct.

In November 2015, the NPS informed Jacobs that it would not extend its contract, purportedly because there was not enough work in 2016 to warrant the presence of a contract management representative. After receiving this news, Weber contacted the OIG and stated that he believed NPS's decision not to renew the contract was due to his reports to the OIG, and that he feared Jacobs would "blame him for the contract non-extension and not retain him after it expired." App. 924. In December 2015, Jacobs' contract ended, and Weber was placed on a ninety-day company convenience leave, during which time Jacobs did not pay Weber a salary but provided him with health benefits.[1] After the ninety-day period, Jacobs formally discharged Weber.

Weber filed a complaint with the OIG on December 3, 2015. In an interview with the OIG in January 2016, Weber

---

[1] While on convenience leave, Weber regularly notified Jacobs that he was available for work and applied for other open positions within the company, but he was never hired. Two other Jacobs employees on the Ellis Island project, however, were reassigned to other projects for the company.

expressed his belief that Jacobs placed him on convenience leave due to his disclosures about the Ellis Island project. The OIG commenced an investigation. In April 2016, the OIG requested, and Weber agreed to, an extension of the 180-day statutory deadline to complete its investigation. From April through June 2016, the OIG conducted interviews with Jacobs, Perini, and NPS employees about the Ellis Island project. On February 21, 2017, beyond the 360-day extended deadline, the OIG completed and transmitted its report to the Acting Secretary for the DOI. One week later, the OIG sent redacted copies of the report to Weber and Jacobs.

More than three years later, on August 5, 2020, the DOI sent Jacobs a letter indicating that it had not received a response from Jacobs to the report and offering Jacobs thirty days within which to respond. Jacobs responded that it had never received the report, and the DOI then re-sent the report to Jacobs. On August 13, 2020, Jacobs notified the DOI that it declined to submit a response, asserting that the report was issued after the statutory deadline in 41 U.S.C. § 4712 and that "the OIG and the Secretary [therefore] lack[ed] jurisdiction to take further action" in the case. App. 1038.

On December 8, 2020, the DOI notified Jacobs and Weber that it would issue a determination, provided the parties with redacted exhibits, and offered the parties thirty days to submit additional information. Jacobs again informed the DOI that it would not respond because it believed that the agency lacked jurisdiction.

The DOI issued its final determination and order on December 1, 2021, well beyond the thirty-day deadline to do so, which (1) concluded that Jacobs had engaged in a

prohibited reprisal against Weber in violation of 41 U.S.C. § 4712, (2) awarded Weber $803,906.08, which included $615,648.79 in backpay covering the period from April 2016, when Weber was officially terminated, until January 2021, reduced by the amount Weber earned through other employment, and (3) ordered Jacobs to reinstate Weber to the same or a substantially similar position with the same pay and benefits.

Jacobs petitions for review of the DOI's authority to issue the order and, alternatively, asks that we reduce the award.[2]

---

[2] Weber did not petition for review of the agency's decision.

## II[3]

### A

We first examine whether the DOI had jurisdiction to issue its order after the statutory deadlines had passed. To repeat, § 4712 provides that the OIG "shall investigate" and

[3] We have jurisdiction pursuant to 41 U.S.C. § 4712(c)(5), which allows a party adversely affected by an agency's order to petition for review in "the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred." Weber argues that we lack jurisdiction because he was not a New Jersey resident on the day he was fired. At least two other circuits have held that similar provisions about where a violation occurred speak to venue, not jurisdiction. Peck v. Dep't of Lab., 996 F.3d 224, 228 (4th Cir. 2021); Brentwood at Hobart v. NLRB, 675 F.3d 999, 1002 (6th Cir. 2012). We need not address that issue. Whether it goes to jurisdiction or venue, the agency's order here clearly alleges that the violation occurred in New Jersey: Weber worked and resided in New Jersey when he was staffed on the Ellis Island project, made the protected disclosures to the OIG, and was placed on company convenience leave.

In reviewing an agency action, we consider whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). "The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." Prometheus Radio Project v. FCC, 652 F.3d 431, 444 (3d Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

"submit a report of the findings of the investigation" within "180 days after receiving the complaint" or within an "additional period of time, up to 180 days," if the complainant agrees. § 4712(b)(1)-(2). "Not later than 30 days after receiving an [OIG] report . . ., the head of the executive agency concerned shall determine whether there is sufficient basis" to conclude that there was a prohibited reprisal, and "shall [] issue an order" denying or granting relief. § 4712(c)(1).

To determine whether these deadlines are jurisdictional, we consider the statute's text, context, and purpose. Dolan v. United States, 560 U.S. 605, 610 (2010). If the language of the statute directly conveys that the power of the agency is circumscribed by the deadline, then our inquiry is complete, and we must conclude the deadline is jurisdictional. See Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161-62 (2010). If not, then we consider, among other things, (1) whether the statute specifies a consequence for noncompliance with the deadline, Dolan, 560 U.S. at 611, (2) whether the procedural provisions of the statute reinforce the statute's purpose, id. at 612, (3) the harm to those who are not responsible for the delay if the agency does not act by the deadline, id. at 613-14, (4) whether there are ways a party who may be impacted by the agency's tardiness can protect itself from delay, id. at 615, and (5) whether important public rights are at stake, Brock v. Pierce County, 476 U.S. 253, 260-62 (1986).[4] Each of these considerations leads us to conclude that the statute's deadlines

---

[4] The nature of the task and the period of time Congress directed for the task to be completed may also indicate whether Congress intended the deadline for agency action to be jurisdictional. Brock v. Pierce County, 476 U.S. 253, 261 (1986).

are not jurisdictional.[5]

First, although § 4712 uses the word "shall" when discussing the deadlines for the OIG to issue its report and the agency to issue its order, "a statute's use of ["shall"] alone has not always led [the Supreme] Court to interpret statutes to bar judges (or other officials) from taking the action to which a missed statutory deadline refers." Dolan, 560 U.S. at 611-12; Brock, 476 U.S. at 262 ("We hold, therefore, that the mere use of the word 'shall' . . . standing alone, is not enough to remove the [agency's] power to act after [the deadline]."); see also Barnhart v. Peabody Coal Co., 537 U.S. 149, 158 (2003) ("Nor, since Brock, have we ever construed a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later."). Here, the use of "shall" alone does not indicate that the deadlines are jurisdictional.

Second, the text does not contain a consequence for the agency's failure to comply with the statutory deadlines. See

_____

[5] There are three types of deadlines: (1) a "jurisdictional" deadline, which is "absolute" and "prevents the court [or other public official] from permitting or taking the action to which the statute attached the deadline," Dolan, 560 U.S. at 610, (2) "claims-processing rules," which "do not limit a court's [or other public official's] jurisdiction, but rather regulate the timing of motions or claims brought before the court [or public official]," id., and (3) a deadline that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed," id. at 611.

10

Dolan, 560 U.S. at 611 (explaining that if a statute "does not specify a consequence for noncompliance with its timing provisions," the deadline likely is not jurisdictional (quotation marks and citation omitted)). In Shenango, Inc. v. Apfel, we identified several statutes in which Congress had articulated an explicit consequence. 307 F.3d 174, 194 (3d Cir. 2002) ("42 U.S.C. § 1396n(h) (application for waiver of Medicaid requirements must be deemed approved if Secretary of Health and Human Services does not issue a decision within ninety days); 49 U.S.C. § [11701(c)] (providing that Surface Transportation Board investigative proceeding is dismissed automatically if not concluded within three years)"). The language in those statutes stands in contrast to § 4712, which does not provide a consequence for an agency head's failure to timely issue its final determination.

This is not to say that missing the deadlines here has no effect. If the agency fails to act within the statutory deadlines, the complainant will be deemed to have exhausted his administrative remedies. See § 4712(c)(2) ("the exhaustion provision"). This result, however, simply gives a complainant another avenue for seeking relief. It does not mean that the agency cannot act if a lawsuit is not filed.[6] The permissive

---

[6] Jacobs relies on several immigration cases that addressed a statute with a similar provision, 8 U.S.C. § 1447(b), allowing a naturalization applicant to file a petition in federal court if the agency fails to render a decision within 120 days. See Aljabri v. Holder, 745 F.3d 816, 821 (7th Cir. 2014) (holding the agency loses jurisdiction over an application once the applicant files in federal court); Bustamante v. Napolitano, 582 F.3d 403, 409-10 (2d Cir.

11

nature of the language concerning the complainant's ability to file suit conveys that a complainant can also opt to have the agency decide his claim. See Bustamante v. Napolitano, 582 F.3d 403, 407 (2d Cir. 2009) ("If the naturalization applicant chooses to do nothing, the application will remain pending before USCIS with the agency maintaining jurisdiction to decide the application."); Etape v. Chertoff, 497 F.3d 379, 385 (4th Cir. 2007) ("Section 1447(b) . . . clearly prescribes consequences for the [US]CIS's failure to act: upon an applicant's petition, a district court acquires jurisdiction and may either decide the matter itself or remand to the [US]CIS with instructions.").[7]  Accordingly, the result of an agency's tardiness simply provides that complainant another avenue to seek relief.[8]

---

2009) (same); Etape v. Chertoff, 497 F.3d 379, 384-85 (4th Cir. 2007) (same); United States v. Hovsepian, 359 F.3d 1144, 1159 (9th Cir. 2004) (en banc) (same).  However, those cases addressed the separate question of whether the agency retained jurisdiction once suit was filed in district court.  Jacobs' citation to Stone v. Duke Energy Corp., 432 F.3d 320 (4th Cir. 2005), is unpersuasive for the same reason.

[7] See also Kash v. Tex. Educ. Agency Def., No. 19-73-CP, 2019 WL 9078399, at *14-15 (U.S. Dep't of Educ. Nov. 22, 2019) (explaining that the exhaustion provision in § 4712 states only that "the complainant may file such an action," implying that the "complainant may also continue to await a decision from the [agency]" (emphasis omitted)).

[8] Jacobs' other textual arguments are unavailing.  Jacobs argues that because the deadlines for the OIG and agency head in subsections (b)(2) and (c)(1), respectively, are laid out separately from the exhaustion provision in subsection (c)(2),

12

Third, interpreting the deadlines in § 4712 as jurisdictional would be contrary to the statute's primary purpose, which is to protect whistleblowers from reprisal and ensure that those who have been subject to reprisals can obtain relief, see § 4712(a). If the deadlines were viewed as jurisdictional, then an agency's tardiness could leave a complainant without relief for reprisals he may have suffered. Cf. Dolan, 560 U.S. at 612-13 (holding that jurisdictionally barring courts from conducting restitution proceedings after the deadline would be contrary to the statute's purpose of ensuring that victims of crime receive full restitution); Shenango, 307 F.3d at 195 (explaining that the Coal Act's key objective was to ensure that miners' retirement benefits would be paid by the relevant private parties, and therefore cutting off

---

these deadlines "must have independent jurisdictional force" under the canon against surplusage. Pet. Br. at 27. As discussed, courts are reluctant to hold that a statutory deadline for agency action is jurisdictional absent an explicit consequence for failure to comply with that deadline. See, e.g., Barnhart, 537 U.S. at 159. Jacobs further asserts that the statute allows the OIG to extend its deadline for the investigation but does not afford the same option to the agency head. Pet. Br. at 28-29. This feature of the statute, however, does not demonstrate that one deadline is jurisdictional while the other is not. The fact that Congress included an extension for the OIG's investigation and not the agency head's final determination likely reflects Congress's understanding that an investigation is often more time-consuming than a final determination. Additionally, courts have held that statutory deadlines are non-jurisdictional even where Congress has not included an extension provision. See, e.g., Dolan, 560 U.S. at 611; Brock, 476 U.S. at 262.

13

the agency's ability to assign miners to the proper entity after the statutory deadline "would surely frustrate that objective"). Put differently, interpreting the deadlines by which the agency must act as jurisdictional would hurt the very people the statute seeks to benefit based on events they cannot control. See Dolan, 560 U.S. at 613-14.

Fourth, when "there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act." Brock, 476 U.S. at 260. Here, there is a less drastic remedy available to a party seeking a speedier determination: it can file suit under the Administrative Procedure Act ("APA") to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). See Brock, 476 U.S. at 260 n.7 (noting that nothing in the relevant statute barred an action to enforce the statutory deadline under the APA); Sw. Pa. Growth All. v. Browner, 121 F.3d 106, 114-15 (3d Cir. 1997) (holding deadline in Clean Air Act was not jurisdictional in part because either the petitioner or the state could have brought an action to enforce the deadline under the APA).

Fifth, we are reluctant to construe statutory deadlines as jurisdictional when a statute "does not merely command the [agency] to file a complaint within a specified time, but requires [it] to resolve the entire dispute within that time." Brock, 476 U.S. at 261. Here, the OIG is tasked with investigating and issuing a report of the investigation within 180 days of a complaint, or within 360 days with an extension. § 4712(b)(2). The agency head then has thirty days to reach a final determination and issue an order. § 4712(c)(1). As Brock acknowledged, these are "substantial task[s]" and "the

14

[agency's] ability to complete [them] within [the deadline] is subject to factors beyond [its] control." 476 U.S. at 261.

Finally, we are reluctant to conclude that a deadline is jurisdictional "when important public rights are at stake." Id. at 260; see also Barnhart, 537 U.S. at 158, 160. As discussed, the statute seeks to protect whistleblowers who report on mismanagement of federal contracts or gross waste of federal funds. Thus, similar to the statute at issue in Brock, § 4712 implicates "both the public fisc and the integrity of a Government [contractor]." 476 U.S. at 259.

For these reasons, the statutory deadlines for agency action in § 4712 are best interpreted "as a spur to prompt [agency] action, not as a bar to tardy completion," Barnhart, 537 U.S. at 172, and thus they are not jurisdictional. Accordingly, the DOI retained jurisdiction to issue its order even after the statutory deadlines in § 4712 had passed.[9]

B

Jacobs asks that, if we conclude that the DOI had jurisdiction, we reduce the backpay award. Jacobs is a sophisticated litigant and had multiple opportunities to

---

[9] While the agency's considerable delay in this case is "troubling, [it is] not legally significant." Frey v. U.S. Dep't of Health & Hum. Servs., 920 F.3d 319, 325 n.21 (5th Cir. 2019) (addressing agency delay under a nearly identical whistleblower statute). Here, Jacobs' allegations of prejudice do "not so subvert the procedural scheme of [§ 4712] as to invalidate the [agency's determination]." United States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990).

15

challenge the award before the agency. It, however, intentionally chose to make just one argument, that the agency lacked jurisdiction. It cannot raise its backpay argument now. See Sw. Pa. Growth All., 121 F.3d at 112; cf. Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017) (stating "waiver . . . is the intentional relinquishment or abandonment of a known right" (quotation marks and citation omitted)).

III

For the foregoing reasons, we will deny Jacobs' petition for review.[10]

---

[10] Because Weber was an intervenor and did not file a petition for review, we will not consider his request that we order the agency to increase its monetary award. Sw. Pa. Growth All., 121 F.3d at 121 ("It is a general rule that an intervenor may argue only the issues raised by the principal parties and may not enlarge those issues.").

16